John C. Theiss, WSBA #24488
**TRUSS** FABER **PC**
1126 34th Avenue, Suite 312
Seattle, WA 98122
Telephone: (206) 752-8255
Facsimile: (833) 422-0237

## IN UNITED STATES DISTRICT COURT FOR THE EASTERN
## DISTRICT OF WASHINGTON AT SPOKANE

| | |
|---|---|
| KEY TRONIC CORPORATION, a Washington corporation, <br><br> Plaintiff, <br> vs. <br><br> SKYBELL TECHNOLOGIES, INC., a Nevada corporation, and <br><br> ALARM.COM, INC., a Delaware corporation, <br><br> Defendants. | Case No. 2:23-cv-00237-SAB <br><br> SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, INDEMNIFICATION, PROMISSORY ESTOPPEL, TORTIOUS INTERFERENCE |

COMES NOW Plaintiff Key Tronic Corporation ("Key Tronic"), by and through its attorneys, Truss Faber PC, and for its complaint against SkyBell Technologies, Inc. ("SkyBell"), and Alarm.com, Inc. (or "ADC") (collectively "Defendants"), states and alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1.1     Plaintiff Key Tronic is a Washington corporation with its principal place of business in Spokane Valley, Washington. Accordingly, pursuant to 28 U.S.C. § 1332(c)(1), Plaintiff is deemed a citizen of Washington.

SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, INDEMNIFICATION, PROMISSORY ESTOPPEL, TORTIOUS INTERFERENCE

**TRUSS** FABER
1126 34th Avenue, Suite 312
Seattle, WA 98122
Tel: (206) 752-8255
Fax: (833) 422-0237

1.2    Defendant SkyBell is a Nevada corporation that, on information and belief, has its principal place of business in Irvine, California. Accordingly, pursuant to 28 U.S.C. §1332(c)(1), Defendant SkyBell is deemed a citizen of Nevada and California.

1.3    Defendant ADC is a Delaware corporation that, on information and belief, has its principal place of business in McLean, Virgnia. Accordingly, pursuant to 28 U.S.C. §1332(c)(1), Defendant ADC is deemed a citizen of Delaware and Virginia.

1.4    This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity of citizenship exists between Plaintiff and Defendants and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

1.5    Venue properly lies in this Court under 28 U.S.C. §1391 because (i) SkyBell purposely availed itself to personal jurisdiction of state and federal courts in the State of Washington by executing a binding and enforceable contract containing a forum selection clause, and (ii) a substantial part of the events giving rise to Key Tronic's claims asserted herein occurred in this judicial district.

## FACTS

2.1    Key Tronic is a contract manufacturing service provider specializing in full product assembly, molding, fabrication, and engineering services for complex electro-mechanical products.

2.2    On information and belief, SkyBell is a provider of consumer products SkyBell generally describes as smart video doorbells. SkyBell markets its products as "the only ones trusted by some of the top home security companies in the world." SkyBell represents to the public that SkyBell has over 150 issued patents and that SkyBell's allegedly emerging intellectual property "will enable the next generation of home security, automation and IOT well beyond the front door."

SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, INDEMNIFICATION, PROMISSORY ESTOPPEL, TORTIOUS INTERFERENCE

2.3    On information and belief, ADC is a provider of alarm services that "protect millions of home and business owners." ADC represents to the public: "Twenty years ago, we invented the security system. . . . Alarm.com's industry-leading security and automation services are only available through licensed security experts, who deliver professional design, installation, and 24/7 monitoring."

2.4    On or about October 22, 2017, Key Tronic and SkyBell executed a Manufacturing Agreement ("Agreement"). In the Agreement, Key Tronic is referred to as "Supplier," and SkyBell is referred to as "Buyer."

2.5    Section 1.a of the Agreement provides, in pertinent part, that "Supplier shall sell to Buyer and Buyer shall purchase from Supplier under the terms and conditions of this Agreement ███████████████ units of the Product listed on Exhibit A." Section 1.d of the Agreement provides, in pertinent part: "Buyer and Supplier will work together to identify and procure any additional material required to complete the ███████████████ units of Product, at Buyer's discretion."

2.6    According to Section 3.b of the Agreement, SkyBell must pay invoices for the products Key Tronic has manufactured and delivered to SkyBell within 30 days from the date of each invoice. In addition, under Section 3.d of the Agreement, SkyBell agreed to pay interest on late payments pursuant to Section 3.b of the Agreement "at the rate of ███████████ or the maximum interest allowed by law on all unpaid invoices."

2.7    Section 7 of the Agreement contains an indemnification clause that states, in pertinent part:

> **7.    INDEMNIFICATION**
> Unless otherwise stated in this Agreement, each party shall defend, indemnify and hold harmless the other party from and against all damages, claims, liabilities and expenses arising out of or resulting in any way from any act or omission of the indemnifying party, its agents, employees or subcontracts. . . . ***Buyer's indemnification obligations shall include, but are not limited to damages, claims,***

SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, INDEMNIFICATION, PROMISSORY ESTOPPEL, TORTIOUS INTERFERENCE

*liabilities, losses, judgments, duties, fines, civil penalties, costs and expenses arising out of or resulting in any way from* (a) any Product specifications or designs as provided by Buyer to Supplier under this Agreement; (b) any claim that the Product infringes any third party rights of any kind, including without limitation any patent, trade secret, copyright or trademark rights; or *(c) Buyer's breach of any of the provisions of this Agreement*.

2.8     Section 11 of the Agreement further provides, in pertinent part:

**11.    TERM AND TERMINATION**

a.     This Agreement shall commence on the Effective Date and shall remain in effect until up to ███████████████ Products are manufactured by Supplier and delivered to Supplier's Dock. Supplier and Buyer will agree in writing if less than ███████████████ Products are manufactured.

b.     *Either party may terminate this Agreement immediately upon written notice if the other party (i) fails to comply with any material term or condition of this Agreement*, (ii) becomes insolvent or makes a general assignment for the benefit of creditors or (iii) has a petition under the Bankruptcy Act filed by or against it and such petition is not dismissed within sixty (60) days of the filing date.

c.     Either party may terminate this Agreement at any time, for any reason upon thirty (30) days written notice to the other party.

d.     Upon termination of this Agreement, in whole or in part, for any reason the Supplier shall remain obligated to deliver Products ordered by Buyer and acknowledged by Supplier prior to termination and Buyer shall pay for all such Products on the invoice due date or the termination date, whichever occurs first. After termination and after Buyer has paid all amounts due to Supplier pursuant to this Agreement, Supplier shall return all Tools, all Buyer furnished equipment and any other material provided by or owned by Buyer. *On the termination date, Buyer shall also purchase from Supplier all work in process at Supplier's cost plus the current quoted margin and all finished goods inventory of Products on hand at the applicable price. Payment shall be due upon receipt of Supplier's invoice*.

2.9     With respect to the scope of liability for breach of the terms of the Agreement, Section 10 of the Agreement provides as follows:

**10.    LIMITATION OF LIABILITY**

SUPPLIER SHALL NOT BE LIABLE TO BUYER FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, PUNITIVE OR SPECIAL DAMAGES OR ANY DAMAGES WHATSOEVER RESULTING FROM LOSS OF USE OR

SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED
COVENANT OF GOOD FAITH AND FAIR DEALING, INDEMNIFICATION,
PROMISSORY ESTOPPEL, TORTIOUS INTERFERENCE

**TRUSS** FABER
1126 34th Avenue, Suite 312
Seattle, WA 98122
Tel: (206) 752-8255
Fax: (833) 422-0237

OPPORTUNITY, DATA OR PROFITS OR LOST BUSINESS RESULTING IN ANY WAY FROM THIS AGREEMENT EVEN IF ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THIS CLAUSE SHALL SURVIVE ANY TERMINATION OR EXPIRATION OF THIS AGREEMENT.

2.10   Further, Section 15 of the Agreement states, in pertinent part:

**15.    GENERAL PROVISIONS**

. . .

**e.    Controlling Law.**

This Agreement and its formation, operation and performance and the terms of all sales of Product hereunder, shall be governed, construed, performed and enforced in accordance with the laws of the State of Washington without regard to its conflict of laws principles.  Each party irrevocably agrees that the state and federal courts of Washington shall have exclusive jurisdiction to hear and determine any suit, action or proceeding which may arise out of or in connection with this Agreement and, for such purposes, irrevocably submits to the jurisdiction of those courts.

2.11   On or about November 6, 2017, Key Tronic and SkyBell executed Amendment No. 1 to the Agreement ("Amendment No. 1"). Amendment No. 1 was executed purportedly as a result of SkyBell's "increase in demand of manufacturing services[] [and] decreased lead times." Section 1 of Amendment No. 1 states that "[u]pon execution of this Amendment, Buyer agrees to purchase from Supplier ███████████ for Products listed below for a period of ███████ from the date of this addendum [sic]."

2.12   In Section 2 of Amendment No. 1, the parties agreed to replace the original language of the first sentence of Section 1.a of the Agreement with the following language: "***Supplier shall sell to Buyer and Buyer shall purchase from Supplier under the terms and conditions of this Agreement all Products listed in Exhibit A and those product lines agreed to in Addendum 1, signed on November 6, 2017, for a period*** ███████." Finally, Amendment No. 1 states that "Buyer and Supplier agree to review pricing of Products after the first ███████████ units are completed and shipped, with appropriate changes made in Exhibit B, if applicable."

SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, INDEMNIFICATION, PROMISSORY ESTOPPEL, TORTIOUS INTERFERENCE

2.13    On January 15, 2018, Key Tronic and SkyBell executed Amendment No. 2 to the Agreement ("Amendment No. 2"). Amendment No. 2 was executed purportedly because SkyBell was "experiencing an increase in demand of manufacturing services, decreased lead times and require[d] design for manufacturing services from Supplier since the Manufacturing Agreement was entered into as of October 22, 2017 ("Agreement") and the Amendment No. 1 was entered into as of November 6, 2017."

2.14    Amendment No. 2 states that Sections 1 and 2 of Amendment No. 1 "are hereby deleted and replaced with the below Sections 1 and 2." Specifically, Section 1 of Amendment No. 1 was replaced with the following provision that states, in pertinent part:

> 1.    Non-Exclusive Manufacturing Term
> Upon execution of this Amendment No. 2, Buyer agrees to purchase from Supplier a minimum of ███ of all global video doorbell demand for Products listed below for a period of ██████████ from the date of this Amendment, but only if Supplier maintains a 'Market Competitive Value Proposition' as defined in Section 3.

2.15    In addition, Amendment No. 2 further revised the language of Section 1.a of the Agreement by substituting the previously amended first sentence of that section by the following sentence: "***Supplier shall sell to Buyer and Buyer shall purchase from Supplier under the terms and conditions of this Agreement the product lines agreed to in Amendment No. 2, signed on January 15, 2018, for the period set forth in such Amendment***."

2.16    Finally, Amendment No. 2 replaced the language of Sections 11.a and 11.c of the Agreement as follows:

> 11.a    This Agreement shall commence on the Effective Date and shall remain in effect until the third-year anniversary of the Effective Date ('Initial Term') and will automatically renew for additional consecutive terms of one (1) year, unless cancelled by either party upon at least 90 days written notice to the other party prior to the end of the then current term.
>
> 11.c    Neither party may terminate this Agreement during the Initial Term other than for cause (which shall include the matters set forth in Section 11b). Either party

SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, INDEMNIFICATION, PROMISSORY ESTOPPEL, TORTIOUS INTERFERENCE

TRUSS FABER
1126 34ᵀᴴ Avenue, Suite 312
Seattle, WA 98122
Tel: (206) 752-8255
Fax: (833) 422-0237

may terminate this Agreement at any time during any renewal term, without cause, upon at least one-hundred eighty (180) days written notice to the other party.

2.17    On February 12, 2018, Key Tronic and SkyBell executed Amendment No. 3 ("Amendment No. 3"). Amendment No. 3 was executed purportedly because SkyBell was again "experiencing an increase in demand of manufacturing services, decreased lead times and require[d] design for manufacturing services from Supplier since the Manufacturing Agreement was entered into as of October 22, 2017 ("Agreement") and the Amendment No.1 was entered into as of November 6, 2017 and the Amendment No. 2 was entered into as of January 15, 2018." The Agreement, as amended by Amendments Nos. 1, 2 and 3, we hereafter refer to as "the Agreement

2.18    Amendment No. 3 states that Sections 1 and 2 of Amendment No. 2 "are hereby deleted and replaced with the below Sections 1 and 2." Specifically, Section 1 of Amendment No. 2 was replaced by the following provision that states, in pertinent part:

1.    Non-Exclusive Manufacturing Term
Upon execution of this Amendment No. 2 [sic], Buyer agrees to purchase from Supplier a minimum of ██████ of all global video doorbell demand for Products listed below for a period of ████████ from the date of this Amendment, but only if Supplier maintains a 'Market Competitive Value Proposition' as defined in Section 3.

2.19    Amendment No. 3 again revised the language of Section 1.a of the Agreement by substituting the previously twice-amended first sentence of that section by the following sentence:

*"Supplier shall sell to Buyer and Buyer shall purchase from Supplier under the terms and conditions of this Agreement the product lines agreed to in Amendment No. 3, signed on February 12, 2018, for the period set forth in such Amendment."*

2.20    Finally, Amendment No. 3 further replaced the language of Sections 11.a and 11.c of the Agreement as follows:

11.a    This Agreement shall commence on the Effective Date and shall remain in effect until the six-year anniversary of the Effective Date ('Initial Term') and will automatically renew for additional consecutive terms of one (1) year, unless

SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, INDEMNIFICATION, PROMISSORY ESTOPPEL, TORTIOUS INTERFERENCE

TRUSS FABER
1126 34th Avenue, Suite 312
Seattle, WA 98122
Tel: (206) 752-8255
Fax: (833) 422-0237

cancelled by either party upon at least 90 days written notice to the other party prior to the end of the then current term.

11.c    Neither party may terminate this Agreement during the Initial Term other than for cause (which shall include the matters set forth in Section 11b). Either party may terminate this Agreement at any time during any renewal term, without cause, upon at least one-hundred eighty (180) days written notice to the other party.

2.21    On or about March 20, 2018, Key Tronic, SkyBell, and ADC executed a three-way Memorandum of Understanding, in which Key Tronic agreed to prioritize the production of SkyBell Slim for the benefit of ADC, and ADC agreed "to fund the creation of the [SkyBell] Slim manufacturing line." SkyBell and ADC executed separate written agreements with each other for the distribution of the products that Key Tronic would manufacture.

2.22    On or about May 17, 2018, to induce Key Tronic to acquire substantial inventory for the benefit of SkyBell's customer, ADC, Key Tronic and ADC executed an Inventory Purchasing Agreement, which states:

1. ORDERS, FORECASTS AND AGED INVENTORY

a.    ADC shall provide KTC [Key Tronic] once every four (4) weeks in writing with a six month rolling forecast of ADC's requirements for Products ordered from Skybell Technologies, Inc., ("Skybell"). KTC is authorized to rely on the forecasts to order, purchase and otherwise make available within normal acquisition cycles in existence from time to time as determined by KTC in its reasonable judgment all parts and materials for incorporation into forecasted Products. ADC will be responsible for taking delivery of forecasted Products at the times and in the quantities provided in the forecast to KTC. If Alarm.com does not take delivery of the Products at the forecasted time and in the forecasted quantity, then for any parts and materials purchased by KTC pursuant to this paragraph 1, including parts and materials set forth on Exhibit A, relating to the forecasted Products that remain in KTC's inventory for a period in excess of thirty (30) days (Aged Inventory) beyond the date on which Alarm.com had forecast to take delivery of such Products, then ADC shall immediately purchase all such Aged Inventory at KTC's cost plus ten percent (10%) and ADC shall pay KTC's cost to either package and ship Aged Inventory to ADC or scrap Aged Inventory.

SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, INDEMNIFICATION, PROMISSORY ESTOPPEL, TORTIOUS INTERFERENCE

3. TERM AND TERMINATION

    d.    Upon termination, the KTC shall remain obligated to deliver Products ordered by ADC through Skybell and acknowledged by KTC prior to termination and ADC shall pay for all such Products on the invoice due date or the termination date, whichever occurs first. On the termination date, ADC shall purchase from KTC at KTC's cost all inventory of parts and materials on hand, on order or in transit purchased to ADC's forecasts within lead times or purchased as a result of minimum order requirements of parts and materials vendors. On the termination date, ADC shall also purchase from KTC all work in process at KTC's cost plus the current quoted margin and all finished goods inventory of Products on hand at the applicable price. Payment shall be due upon receipt of KTC's invoice.

    2.23   On October 24, 2018, Key Tronic and SkyBell entered into a new Manufacturing Agreement that "supersedes and replaces the existing Manufacturing Agreement dated October 22, 2017 and all subsequent Amendments thereto." Under the Agreement, "[SkyBell] shall purchase from Supplier under the terms and conditions of this Agreement ████████ ████ of [SkyBell's] requirements for the Products listed on Exhibit A," which included four different models of video doorbells and a wedge kit for ADC, as well as several products for other SkyBell customers. The indemnification and late payment interest provisions remained largely unchanged and appear in Section 13 and Section 8.d, respectively. The other relevant terms are as follows:

2. ORDERS, FORECASTS AND AGED INVENTORY

    a.    Buyer shall provide Supplier once every four (4) weeks with a twelve (12) month rolling forecast of Buyer's requirements for Products. . . . The forecasts shall not be treated as authorization to manufacture Products. However, ***Buyer authorizes, directs and expects Supplier to rely on the forecasts to order, purchase and otherwise make available*** within normal acquisition cycles and vendor required Minimum Order Quantities (MOQ) in existence from time to time as determined by Supplier in its reasonable judgment ***all parts and materials for incorporation into forecasted Products including the applicable parts and materials set forth on Exhibit C***. Notwithstanding the above, Buyer agrees that Supplier will only order parts to the forecasts and produce product to purchase orders when the forecasts and purchase orders are ***backed up by a binding forecast ("Binding***

SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, INDEMNIFICATION, PROMISSORY ESTOPPEL, TORTIOUS INTERFERENCE

▚TRUSS FABER
1126 34th Avenue, Suite 312
Seattle, WA 98122
Tel: (206) 752-8255
Fax: (833) 422-0237

*Forecast") or purchase order from Buyer's customer*, and assurances from Buyer's customers who Supplier, in its judgement, deems credit worthy. If any parts and materials purchased by Supplier pursuant to this paragraph 2, including applicable parts and materials set forth on Exhibit C remain in Supplier's inventory for a period in excess of sixty (60) days (*Aged Inventory*), then Buyer shall, *at Supplier's option*: (1) *immediately pay Supplier a cash deposit* in the amount of the Aged Inventory at Supplier's cost *plus ten percent (10%)*, and if Supplier is to retain possession of the Aged Inventory, Buyer shall pay Supplier an *inventory storage fee equal to two percent (2%)* of Supplier's cost of Aged Inventory per month; or (2) *immediately purchase all such Aged Inventory* at Supplier's cost plus ten percent (10%) and Buyer shall pay Supplier's costs to either package and ship Aged Inventory to Buyer or scrap Aged Inventory; or (3) *immediately provide Supplier with a Purchase order to consume Aged Inventory* in the next thirty (30) days. . . .

. . . .

c.    From time to time on its own initiative or upon Buyer's written request, Supplier will provide a written Aged Inventory report to Buyer detailing the amount of Aged Inventory at Supplier. Buyer will respond to Supplier in writing with ten (10) days of receipt of the Aged Inventory report with details of any good faith disagreement. Buyer's failure to respond within such period will represent its acceptance of the Aged Inventory report. Should Buyer disagree with the Aged Inventory report, Buyer and Supplier will work in good faith to promptly resolve the disagreement, escalating such disagreement to executive management at the request of either party. Any undisputed portion of the Aged Inventory report shall be resolved pursuant to this Section.

. . . .

f.    If Buyer does not purchase and take delivery of any units of Products during any continuous ninety (90) day period during the term of this Agreement, then Supplier shall have the right to invoice Buyer for and in that event Buyer shall purchase from Supplier at Supplier's cost plus ten percent (10%) all inventory of parts and materials (including MOQs) on hand, on order or in transit purchased to Buyer's forecasts within lead times and all finished goods inventory of Products on hand at the applicable price; provided that such purchase by Buyer will be subject to the terms and conditions of Section 2a above. In addition, any work in process will be converted to finished goods, which Buyer will purchase at the applicable price. Buyer's payment shall be due in accordance with the payment terms set forth in Section 6 of this Agreement. If Supplier can return any parts and

SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, INDEMNIFICATION, PROMISSORY ESTOPPEL, TORTIOUS INTERFERENCE

materials to its suppliers at no charge, Supplier will only charge Buyer ten percent (10%) of the returned parts and materials cost. Supplier agrees to not sell to a third party any Aged Inventory per Section 2.a. that Buyer has not purchased from Supplier and paid for unless mutually agreed. Approval to sell will not be unreasonably withheld by Buyer.

. . . .

3. ▮▮▮▮▮▮▮▮▮▮

    a.    During the term of the agreement, ***Buyer shall*** ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ***of Buyer's requirements*** for the Product(s) and all derivatives thereof from Supplier as the ▮▮▮▮▮▮▮▮ of the Product(s). . . .

    b.    If during the term of this Agreement, beginning calendar year 2019, Buyer . . . ***engages with another supplier for reasons other than the Supplier's inability to provide production capacity***, causing less than ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ of Product(s) to be purchased by Buyer from Supplier annually, ***then Buyer will pay a pro rata fee*** to Supplier of ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ per year. The pro rata fee will be based on a minimum purchase of ▮▮▮▮▮▮▮ of Product(s) purchased from Supplier by Buyer. For example, if Buyer only purchases ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ from Supplier in a calendar year, Buyer would pay Supplier ▮▮▮▮▮▮▮▮▮▮. The foregoing assumes that parts and materials support manufacturing.

. . . .

    d.    Supplier agrees to manufacture Product in accordance with ***Buyer's binding forecasts and purchase orders*** Supplier has accepted per Section 2.a., provided parts are available and delivered on-time to Supplier's facility. If Supplier repeatedly fails to manufacture Product per Buyer's binding forecast and purchase orders Supplier has accepted per Section 2.a. due to issues under the direct and sole control of Supplier, Buyer will provide written notice to Supplier of said failure to manufacture Product as a material breach, subject to the termination provisions of Section 17. If said material breach remains uncured for sixty (60) days after written notification, Supplier's ▮▮▮▮▮▮▮ described in Sections 3,a, 3.b and 3.c is terminated and becomes null and void.

## 8. PRICES AND PAYMENT/COST REDUCTION

SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, INDEMNIFICATION, PROMISSORY ESTOPPEL, TORTIOUS INTERFERENCE

. . . .

b.    Buyer shall pay all invoices for Products delivered within thirty (30) days of the date of invoice . . . , unless Buyer and Supplier agree otherwise.

. . . .

d.    With respect to payments due from Buyer to Supplier hereunder, if full payment of undisputed amounts is not made by Buyer by the due date then Buyer shall be liable to Supplier for the lesser of interest at the rate of 1.0% per month or the maximum interest allowable by law on all unpaid invoices.

17. TERM AND TERMINATION

a.    This Agreement shall commence on the Effective Date and shall remain in effect until the fourth-year (4th) anniversary of the Effective Date ("Initial Term") and will automatically renew for additional consecutive terms of one (1) year, unless cancelled by either party upon at least ninety (90) days written notice to the other party prior to the end of the current term.

b.    Either party may terminate this Agreement immediately upon written notice if the other party (i) fails to comply with any material term or condition of this Agreement, [or] (ii) becomes insolvent or make a general assignment for the benefit of creditors . . . .

c.    Neither party may terminate this Agreement during the initial term other than for cause, such as a material breach, but only if such material breach remains uncured for sixty (60) days after written notification of said breach. Either party may terminate this Agreement at any time during any renewal term, without cause, upon at least one-hundred eighty (180) days written notice to the other party.

d.    Upon termination of this Agreement, in whole or in part, for any reason the Supplier shall remain obligated to deliver Products ordered by Buyer and acknowledged by Supplier prior to termination and Buyer shall pay for all such Products on the invoice due date or the termination date, whichever occurs first. After termination and after Buyer has paid all amounts due to Supplier pursuant to this Agreement, Supplier shall return all Tools, all Buyer furnished equipment and any other material provided by or owned by Buyer. On the termination date, Buyer shall also purchase from Supplier all work in process at Supplier's cost plus the current quoted margin and all finished goods inventory of Products on hand at the applicable price. Payment shall be due upon receipt of Supplier's invoice.

SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, INDEMNIFICATION, PROMISSORY ESTOPPEL, TORTIOUS INTERFERENCE

TRUSS FABER
1126 34th Avenue, Suite 312
Seattle, WA 98122
Tel: (206) 752-8255
Fax: (833) 422-0237

(emphasis added).

2.24    In order to perform its duties under the Agreement and Inventory Purchasing Agreement, Key Tronic has been continuously and reasonably acquiring a substantial inventory of parts and materials that are needed for those products. As contemplated by the Inventory Purchasing Agreement, ADC issued forecasts for Key Tronic to acquire inventory, and as contemplated by the Agreement, SkyBell issued Purchase Orders for Key Tronic to acquire inventory, including, without limitation, Purchase Orders No. 4032; No. 4068; No. 4077; No. 4093; No. 4141; No. 4156; No. 4189; No. 4197; No. 4216; No. 4217; No. 4222; No. 4236; No. 4253; and No. 4310. Under the Agreement, the Inventory Purchasing Agreement, and Washington law, Defendants have a duty to compensate Key Tronic for the acquired and Aged Inventory of parts and materials that remained unused. Key Tronic manufactured and delivered products to SkyBell and duly submitted invoices for payment.

2.25    The parties operated under the terms of the Agreement for more than two years, during which time, Key Tronic has been manufacturing and delivering to SkyBell the products identified in Exhibit A to the Agreement. During that time period, Key Tronic kept acquiring inventory of parts and materials referred to in Paragraphs 2.22–2.24 of this Complaint, to ensure its ability to manufacture the products SkyBell needed to sell to ADC and other SkyBell customers. Key Tronic submitted invoices to SkyBell for payment.

2.56    In or around January 2021, SkyBell and ADC began to cause certain Vatics parts, which are necessary to the production of SkyBell's products, to be diverted away from Key Tronic, thus impairing Key Tronic's ability to manufacture SkyBell's video doorbells. Further, in or around January 2021, SkyBell and ADC began to cause those same Vatics parts to be directed towards one of Key Tronic's competitors. SkyBell and ADC then began editing lower their purchase orders with Key Tronic and began obtaining their manufacturing needs from Key Tronic's competitor, in breach of the ██████████ of SkyBell's Agreement. SkyBell and

SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, INDEMNIFICATION, PROMISSORY ESTOPPEL, TORTIOUS INTERFERENCE

TRUSS FABER
1126 34th Avenue, Suite 312
Seattle, WA 98122
Tel: (206) 752-8255
Fax: (833) 422-0237

ADC knew that Key Tronic was continuing to acquire other parts to meet capacity but couldn't manufacture the finished products without the Vatics parts.

2.27    SkyBell owes a contractual and legal duty to pay Key Tronic for the Aged Inventory, as Section 2.a of the Parties' revised Agreement explicitly provides for SkyBell's liability: When "any parts and materials . . . remain in [Key Tronic's] inventory for a period in excess of sixty (60) days," SkyBell is required to "immediately pay" Key Tronic the cost of the Aged Inventory "at [Key Tronic's] cost plus ten percent (10%)" and either pay to ship it, pay to scrap it, place a Purchase Order to use the Aged Inventory, or pay "an inventory storage fee equal to two percent (2%) of [Key Tronic's] cost of Aged Inventory per month." SkyBell's duty to pay for Aged Inventory also stems from Section 8.a of the Agreement that provides that "[a]ny applicable surcharges, including but not limited to surcharges *on material*, freight and fuel, shall be paid by Buyer." ADC also owes a contractual and legal duty to pay Key Tronic for the Aged Inventory, as a nearly identical clause appears in Section 1.a. of the Inventory Purchasing Agreement: "If Alarm.com does not take delivery of the Products . . . , then for any parts and materials . . . in KTC's inventory for a period in excess of thirty (30) days (Aged Inventory) . . . , then ADC shall immediately purchase all such Aged Inventory at KTC's cost plus ten percent (10%) and ADC shall pay KTC's costs to either package and ship Aged Inventory to ADC or scrap Aged Inventory."

2.28    Pursuant to the unambiguous terms of Section 8.b of the Agreement (PRICES AND PAYMENT/COST REDUCTION), SkyBell also has a duty to pay each of Key Tronic's invoices for the manufactured and delivered products "within thirty (30) days of the date of invoice."

2.29    On information and belief, on or about February 11, 2022, SkyBell stopped paying Key Tronic's invoices for the products Key Tronic has manufactured and delivered to SkyBell under the terms of the Agreement.

SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, INDEMNIFICATION, PROMISSORY ESTOPPEL, TORTIOUS INTERFERENCE

TRUSS FABER
1126 34th Avenue, Suite 312
Seattle, WA 98122
Tel: (206) 752-8255
Fax: (833) 422-0237

2.30   Key Tronic has also provided SkyBell and ADC with an itemized list of Aged Inventory held by Key Tronic that Key Tronic had purchased for the purpose of accommodating Purchase Orders from SkyBell and ADC. Key Tronic requested that SkyBell pay for the Aged Inventory. Key Tronic has also requested that ADC pay for the Aged Inventory. SkyBell and ADC have failed to pay Key Tronic for the Aged Inventory at issue.

2.31   SkyBell and ADC remain unwilling or unable to make payments due under the Agreement and the Inventory Purchasing Agreement for products and Aged Inventory.

2.32   SkyBell owes Key Tronic the principal amount of $4,076,533.43 for accounts receivable and Aged Inventory and related damages, plus agreed upon interest on late payments (approximately $265,422.82), Aged Inventory storage costs ($250,000) and a line fee ($350,000), for the total amount of $4,941,956.25, plus a pro rata fee in excess of $4,000,000 due under Section 3.b of the Agreement, all in breach of the terms of the Agreement and Washington law. ADC is liable for the Aged Inventory that Key Tronic has acquired in the amount of $2,841,372.38 plus storage costs in the amount of $250,000.

2.33   On November 21, 2022, acting through its undersigned counsel, Key Tronic requested, in writing, that SkyBell immediately pay Key Tronic. SkyBell has failed to do so. Key Tronic also requested, in writing, that ADC pay Key Tronic. ADC has failed to do so.

2.34   By refusing to pay to Key Tronic for the manufactured and delivered products and for the accumulated Aged Inventory, SkyBell and ADC respectively committed material breaches of the contractual obligations they owe to Key Tronic pursuant to the express terms of the Agreement and Inventory Purchase Agreement.

2.35   SkyBell has retained other contract manufacturers to manufacture the Agreement products, breaching its Agreement of the ███████████████

SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, INDEMNIFICATION, PROMISSORY ESTOPPEL, TORTIOUS INTERFERENCE

TRUSS FABER
1126 34th Avenue, Suite 312
Seattle, WA 98122
Tel: (206) 752-8255
Fax: (833) 422-0237

## I.    FIRST CAUSE OF ACTION – BREACH OF CONTRACT AND IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (AGAINST DEFENDANT SKYBELL)

3.1    Key Tronic reasserts and realleges all preceding paragraphs 1.1 through 2.34 as if fully set forth herein.

3.2    This cause of action arises under the Washington Uniform Commercial Code, RCW 62A.1-10, et seq., and the principles of Washington common law and equity.

3.2    Under Washington law, the Agreement that Key Tronic and SkyBell executed on or about October 22, 2017, is a valid and enforceable contract between Key Tronic and SkyBell; Amendments Nos. 1 to 3 to the Agreement are likewise valid and enforceable and are integral and essential parts of the Agreement; and the revised Agreement that Key Tronic and SkyBell executed on October 24, 2018, superseding and replacing the original Agreement and all Amendments thereto is a valid and enforceable contract between Key Tronic and SkyBell.

3.3    Key Tronic has performed all of its obligations under the Agreement.

3.4    Under the terms of the Agreement, as well as RCW 62A.2-301, RCW 62A.2-607, RCW 62A.2-709, and the principles of Washington common law and equity, SkyBell was and is obligated to pay Key Tronic for all of the products Key Tronic has manufactured and delivered to SkyBell in accordance with the Agreement.

3.5    Under the terms of the Agreement, RCW 62A.2-703 and RCW 62A.2-710, as well as the principles of Washington common law and equity, SkyBell was and is obligated to reimburse Key Tronic for the combined cost of Aged Inventory Key Tronic has reasonably acquired for the purpose of manufacturing the products under the Agreement.

3.6    Under the terms of the Agreement, RCW 62A.2-710 and RCW 62A.2-718, as well as principles of Washington law and equity, SkyBell was and is obligated to pay Key Tronic accrued interest on the unpaid total price of the products Key Tronic has manufactured and delivered to SkyBell, with interest.

SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, INDEMNIFICATION, PROMISSORY ESTOPPEL, TORTIOUS INTERFERENCE

.

3.7     Defendant SkyBell failed to pay Key Tronic's invoices for the manufactured and delivered products and for Aged Inventory. Defendant SkyBell also failed to pay Key Tronic interest on late payments, and storage costs. By failing to make these payments, Defendant SkyBell materially breached the Agreement.

3.8     Defendant SkyBell also breached the Agreement's ███████████. Pursuant to Section 3.a of the Agreement, SkyBell "shall ██████████████████████ of ██████████████ for the Product(s) and all derivatives thereof from Supplier as the ███ ████████ of the Product(s)." Pursuant to Section 17.a of the Agreement, SkyBell's obligation under the ██████████ ran from October 24, 2018, to October 24, 2022. In or around January 2021, SkyBell breached the █████████████ by reducing its Purchase Orders with Key Tronic and obtaining manufacturing services of products covered by the Agreement from another manufacturer.

3.9     Under Washington common law and under RCW 62A.1-304, every contract for sale of goods, including the Agreement, contains an implied covenant or obligation of good faith and fair dealing in the performance and enforcement of the contract.

3.10    Defendant SkyBell materially breached the covenant of good faith and fair dealing in the Agreement by Defendant SkyBell's continuing failure to pay Key Tronic's invoices for (a) the products that Key Tronic has manufactured and delivered to SkyBell in accordance with the terms of the Agreement, (b) aged inventory, (c) storage costs, and (d) interest. SkyBell also materially breached the covenant of good faith and fair dealing by seeking out other manufacturers to manufacture Defendants' products, in breach of the express terms of the Agreement's ██████████████ SkyBell also materially breached the covenant of good faith and fair dealing insofar as SkyBell disputed any portion of the Aged Inventory and did not "work in good faith to promptly resolve the disagreement" as required under Section 2.c of the Agreement but instead

SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, INDEMNIFICATION, PROMISSORY ESTOPPEL, TORTIOUS INTERFERENCE

\TRUSS FABER
1126 34ᵗʰ Avenue, Suite 312
Seattle, WA 98122
Tel: (206) 752-8255
Fax: (833) 422-0237

stopped paying Key Tronic's invoices and sought Key Tronic's competitors to manufacture the products covered by the Agreement.

3.11    As a direct and proximate result of SkyBell's breach of its payment and ███████ ███████ under the Agreement and the covenant of good faith and fair dealing implied in the Agreement, Key Tronic has suffered and will continue to suffer financial damages, including but not limited to the unpaid total price of the products Key Tronic has sold and delivered to SkyBell in the amount of $1,235,161.05, the total cost of accumulated Aged Inventory in the amount of $2,841,372.38, the Aged Inventory storage costs in the amount of $250,000, and a line fee in the amount of $350,000, together with agreed-upon interest on late payments ($265,422.82), a pro rata fee in excess of $4,000,000 due under Section 3.b of the Agreement, additional damages based on recovery of the price of all products under statutory and common law that SkyBell contracted for, statutory interest, incidental and consequential damages, and attorneys' fees and costs.

## II. SECOND CAUSE OF ACTION – BREACH OF CONTRACT AND IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (AGAINST DEFENDANT ADC)

4.1    Key Tronic reasserts and realleges all preceding paragraphs 1.1 through 3.11 as if fully set forth herein.

4.2    This cause of action arises under the Washington Uniform Commercial Code, RCW 62A.1-10, et seq., and the principles of Washington common law and equity.

4.3    Under Washington law, the Inventory Purchase Agreement that Key Tronic and ADC executed on or about May 17, 2018, is a valid and enforceable contract between Key Tronic and ADC.

4.4    Key Tronic has performed all of its obligations under the Inventory Purchasing Agreement.

4.5    Under the terms of the Inventory Purchasing Agreement, RCW 62A.2-703 and RCW 62A.2-710, as well as the principles of Washington common law and equity, ADC is

SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, INDEMNIFICATION, PROMISSORY ESTOPPEL, TORTIOUS INTERFERENCE

obligated to reimburse Key Tronic for the combined cost of Aged Inventory Key Tronic has reasonably acquired for the purpose of manufacturing the products under the Inventory Purchasing Agreement.

    4.6    Defendant ADC failed to pay Key Tronic's invoices for the Aged Inventory. Defendant ADC also failed to pay Key Tronic interest on late payments, and storage costs. By failing to make these payments, ADC materially breached the Inventory Purchasing Agreement.

    4.7    Under Washington common law and under RCW 62A.1-304, every contract for sale of goods, including the Inventory Purchasing Agreement, contains an implied covenant or obligation of good faith and fair dealing in the performance and enforcement of the contract.

    4.8    Defendant ADC materially breached the covenant of good faith and fair dealing in the Inventory Purchase Agreement by Defendant ADC's continuing failure to pay Key Tronic's invoices for (a) aged inventory, (c) storage costs, and (d) interest.

    4.9    As a direct and proximate result of ADC's breach of its payment obligations under the Inventory Purchasing Agreement and the covenant of good faith and fair dealing implied in the Inventory Purchasing Agreement, Key Tronic has suffered and will continue to suffer financial damages, including but not limited to the total cost of accumulated Aged Inventory in the amount of $2,841,372.38, the Aged Inventory storage costs in the amount of $250,000, statutory interest, incidental and consequential damages, and attorneys' fees and costs. As a direct and proximate result of ADC's breach of its obligations under the Inventory Purchasing Agreement, ADC is liable for the total cost of accumulated Aged Inventory in the amount of $2,841,372.38, the Aged Inventory storage costs in the amount of $250,000, and additional damages based on recovery of the price of all products under statutory and common law.

SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, INDEMNIFICATION, PROMISSORY ESTOPPEL, TORTIOUS INTERFERENCE

\TRUSS FABER
1126 34th Avenue, Suite 312
Seattle, WA 98122
Tel: (206) 752-8255
Fax: (833) 422-0237

### III.    THIRD CAUSE OF ACTION – BREACH OF CONTRACTUAL DUTY TO INDEMNIFY (AGAINST DEFENDANT SKYBELL)

5.1    Key Tronic reasserts and realleges all preceding paragraphs 1.1 through 4.9 as if fully set forth herein.

5.2    This cause of action arises under Washington law.

5.3    Under Washington law, the Agreement is a valid and enforceable contract between Key Tronic and SkyBell, and the Inventory Purchase Agreement that Key Tronic and ADC executed on or about May 17, 2018, is a valid and enforceable contract between Key Tronic and ADC.

5.4    Key Tronic has performed all of its obligations under the Agreement and Inventory Purchase Agreement.

5.5    Pursuant to Section 13 of the Agreement, SkyBell has a duty to "defend, indemnify and hold harmless [Key Tronic] from and against all damages, claims, liabilities and *expenses arising out of or resulting in any way from any act or omission of the indemnifying party, its agents, employees or subcontractor*s." SkyBell's contractual indemnification obligations to Key Tronic "include, but are not limited to damages, claims, *liabilities*, losses, judgments, duties, fines, civil penalties, *costs and expenses arising out of or resulting in any way from . . . [SkyBell]'s breach of any of the provisions of this Agreement*."

5.6    By requesting, pursuant to the terms of the Agreement, that Key Tronic acquire inventory and manufacture and deliver a certain quantity of products, by promising to purchase and pay for those inventory and products, and by subsequently failing to purchase and pay for the products, SkyBell materially breached the express terms the Agreement. Thus, Key Tronic incurred "liabilities . . . costs and expenses" due to "[SkyBell's] breach of [a] provision[] of this Agreement."    Additionally, ADC's actions in causing Key Tronic to acquire inventory to manufacture products and promising to take delivery of those products and failing to do so left

SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, INDEMNIFICATION, PROMISSORY ESTOPPEL, TORTIOUS INTERFERENCE

**TRUSS** FABER
1126 34th Avenue, Suite 312
Seattle, WA 98122
Tel: (206) 752-8255
Fax: (833) 422-0237

Key Tronic with "expenses arising out of or resulting in any way from . . . [SkyBell's] . . . subcontractors," for which SkyBell has a duty to indemnify Key Tronic.

5.7     As a direct and proximate result of SkyBell's breaches described in Paragraph 4.6 of this Complaint, Key Tronic has incurred liabilities and suffered financial damages, including but not limited to (a) the amounts of money Key Tronic has spent on manufacturing products delivered to SkyBell; (b) the amounts of money Key Tronic has spent on acquiring parts and materials needed to manufacture the products ordered by SkyBell, which parts and materials have now become aged inventory and cannot be utilized by Key Tronic for any purpose, and (c) the costs Key Tronic has incurred in connection with the storage of accumulated aged inventory. Accordingly, SkyBell should indemnify Key Tronic for the unpaid total price of the products Key Tronic has sold and delivered to SkyBell in the amount of $1,235,161.05, for the interest on late payments in the amount of $265,422.82, for the line fee in the amount of $350,000, for the total, aggregate cost of Aged Inventory in the amount of $2,841,372.38, and for the Aged Inventory storage costs in the amount of $250,000, statutory interest, additional damages based on recovery of the price of all products under statutory and common law that SkyBell contracted for, incidental and consequential damages, plus attorneys' fees and costs.

## IV.     FOURTH CAUSE OF ACTION – PROMISSORY ESTOPPEL (AGAINST DEFENDANT SKYBELL)

6.1     Key Tronic reasserts and realleges all preceding paragraphs 1.1 through 5.7 as if fully set forth herein.

6.2     This cause of action arises under equitable principles in the alternative to the other claims asserted herein.

6.3     Under Washington law, the Agreement that Key Tronic and SkyBell executed on or about October 22, 2017, is a valid and enforceable contract between Key Tronic and SkyBell. In addition, Amendments Nos. 1 to 3 to the Agreement are likewise valid and enforceable and are

SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, INDEMNIFICATION, PROMISSORY ESTOPPEL, TORTIOUS INTERFERENCE

\TRUSS FABER
1126 34th Avenue, Suite 312
Seattle, WA 98122
Tel: (206) 752-8255
Fax: (833) 422-0237

integral and essential parts of the Agreement. The Inventory Purchase Agreement that Key Tronic and ADC executed on or about May 17, 2018, is a valid and enforceable contract between Key Tronic and ADC.

6.4    Key Tronic has performed all of its obligations under the Agreement and Inventory Purchase Agreement.

6.5    Throughout the duration of the parties' relationship, Key Tronic has been incurring substantial expenses associated with the acquisition of parts and materials necessary to manufacture the products identified in Exhibit A to the Agreement and in Amendments Nos. 1-3 to the Agreement, and the revised Agreement. In doing so, Key Tronic has been justifiably relying on SkyBell's Purchase Orders and requests that Key Tronic manufacture a certain quantity of products for which Key Tronic reasonably understood SkyBell would pay Key Tronic for under the terms of Section 2 of the Agreement.

6.6    As a result of SkyBell's breach of its promises to purchase all products SkyBell had requested that Key Tronic manufacture, Key Tronic has suffered and will continue to suffer financial damages in the form of needlessly incurred significant costs and expenses, including but not limited to (a) the amounts of money Key Tronic has spent on acquiring parts and materials needed to manufacture the products ordered by SkyBell, which parts and materials have now become Aged Inventory and cannot be utilized by Key Tronic for any purpose, and (b) the costs Key Tronic has incurred in connection with the storage of accumulated Aged Inventory.

6.7    Defendant SkyBell knew or should have reasonably known that SkyBell's Purchase Orders to Key Tronic and requests that Key Tronic manufacture a certain quantity of products for which SkyBell had a duty to pay under the Agreement, would cause Key Tronic to acquire parts and materials necessary for the manufacture of the foregoing quantity of products and that the acquired parts and materials would become Aged Inventory that would have no value to Key

SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED
COVENANT OF GOOD FAITH AND FAIR DEALING, INDEMNIFICATION,
PROMISSORY ESTOPPEL, TORTIOUS INTERFERENCE

TRUSS FABER
1126 34th Avenue, Suite 312
Seattle, WA 98122
Tel: (206) 752-8255
Fax: (833) 422-0237

Tronic if SkyBell failed to purchase the foregoing specific quantity of products and timely pay Key Tronic the products' purchase price.

6.8    Under the principles of promissory estoppel, to avoid injustice, SkyBell should be ordered to compensate Key Tronic for the substantial expenses Key Tronic has incurred to its significant detriment as a result of its justifiable reliance on the Agreement and SkyBell's Purchase Orders and product requests. Other than for delivered products SkyBell never paid for, those expenses include, without limitation, (a) the amounts of money Key Tronic has spent on acquiring parts and materials needed to manufacture the products ordered by SkyBell, which parts and materials have now become Aged Inventory and cannot be utilized by Key Tronic for any purpose, and (b) the costs Key Tronic has incurred in connection with the storage of accumulated Aged Inventory. Accordingly, SkyBell should be ordered to pay Key Tronic for the unpaid total price of the products Key Tronic has sold and delivered to SkyBell in the amount of $1,235,161.05, plus agreed upon interest in the amount of $265,422.82, the total, aggregate cost of Aged Inventory in the amount of $2,841,372.38, the Aged Inventory storage costs in the amount of $250,000, and additional damages based on value of all ordered products under statutory and common law.

## V.    FIFTH CAUSE OF ACTION – PROMISSORY ESTOPPEL (AGAINST DEFENDANT ADC)

7.1    Key Tronic reasserts and realleges all preceding paragraphs 1.1 through 6.8 as if fully set forth herein.

7.2    This cause of action arises under equitable principles in the alternative to the other claims asserted herein.

7.3    Under Washington law, the Inventory Purchase Agreement that Key Tronic and ADC executed on or about May 17, 2018, is a valid and enforceable contract between Key Tronic and ADC.

SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, INDEMNIFICATION, PROMISSORY ESTOPPEL, TORTIOUS INTERFERENCE

TRUSS FABER
1126 34th Avenue, Suite 312
Seattle, WA 98122
Tel: (206) 752-8255
Fax: (833) 422-0237

7.4    Key Tronic has performed all of its obligations under the Inventory Purchase Agreement.

7.5    Throughout the duration of the parties' relationship, Key Tronic has been incurring substantial expenses associated with the acquisition of parts and materials necessary to manufacture the products identified in the Inventory Purchasing Agreement. In doing so, Key Tronic has been justifiably relying on ADC's forecasts and Purchase Orders, submitted through SkyBell, and ADC's requests that Key Tronic manufacture a certain quantity of products for which ADC promised to pay Key Tronic under the terms of Sections 1 and 3 of the Inventory Purchasing Agreement.

7.6    As a result of ADC's breach of its promises to purchase all products ADC had requested Key Tronic to manufacture, Key Tronic has suffered and will continue to suffer financial damages in the form of needlessly incurred significant costs and expenses, including but not limited to (a) the amounts of money Key Tronic has spent on acquiring parts and materials needed to manufacture the products ordered by ADC through SkyBell, which parts and materials have now become Aged Inventory and cannot be utilized by Key Tronic for any purpose, and (b) the costs Key Tronic has incurred in connection with the storage of accumulated Aged Inventory.

7.7    ADC knew or should have reasonably known that ADC's forecasts and Purchase Orders to Key Tronic, as well as ADC's requests that Key Tronic manufacture a certain quantity of products for which Defendants had a duty to pay under the Inventory Purchase Agreement, would cause Key Tronic to acquire parts and materials necessary for the manufacture of the foregoing quantity of products and that the acquired parts and materials would become Aged Inventory that would have no value to Key Tronic if Defendant ADC failed to purchase the foregoing specific quantity of products and timely pay Key Tronic the products' purchase price.

7.8    Under the principles of promissory estoppel, to avoid injustice, ADC should be ordered to compensate Key Tronic for the substantial expenses Key Tronic has incurred to its

SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, INDEMNIFICATION, PROMISSORY ESTOPPEL, TORTIOUS INTERFERENCE

significant detriment as a result of its justifiable reliance the Inventory Purchasing Agreement and ADC's forecasts and Purchase Orders and product requests. Those expenses include, without limitation, (a) the amounts of money Key Tronic has spent on acquiring parts and materials needed to manufacture the products ordered by ADC, which parts and materials have now become Aged Inventory and cannot be utilized by Key Tronic for any purpose, and (b) the costs Key Tronic has incurred in connection with the storage of accumulated Aged Inventory. Accordingly, ADC should be ordered to pay the aggregate cost of Aged Inventory in the amount of $2,841,372.38, and the Aged Inventory storage costs in the amount of $250,000, and additional damages based on value of all products under statutory and common law that SkyBell ordered.

## VI.  SIXTH CAUSE OF ACTION – TORTIOUS INTERFERENCE WITH CONTRACT (AGAINST DEFENDANT ALARM.COM)

8.1    Key Tronic reasserts and realleges all preceding paragraphs 1.1 through 7.8 as if fully set forth herein.

8.2    This cause of action arises under Washington law.

8.3    In or around January 2021, Key Tronic was a party to a valid ███████████ with Defendant SkyBell to manufacture ████████████████████ for certain products, including products for the benefit of Defendant ADC.

8.4    At all times, Defendant ADC knew of the existence of Key Tronic and SkyBell's Agreement and knew of its ███████████.

8.5    In or around January 2021, Defendant ADC intentionally interfered with Key Tronic and SkyBell's Agreement by causing certain parts needed to manufacture SkyBell's products to be diverted away from Key Tronic's supply chain and towards Key Tronic's competitor. Defendant ADC's actions hindered Key Tronic's performance, as ADC well knew, as substitute parts were not reasonably available. Defendant ADC thus intentionally interfered with Key Tronic's

SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, INDEMNIFICATION, PROMISSORY ESTOPPEL, TORTIOUS INTERFERENCE

TRUSS FABER
1126 34th Avenue, Suite 312
Seattle, WA 98122
Tel: (206) 752-8255
Fax: (833) 422-0237

Agreement with SkyBell and intentionally induced SkyBell to breach its Agreement with Key Tronic.

8.6    Defendant ADC's actions were for an improper purpose. ADC knew that its actions in diverting necessary parts would limit Key Tronic's ability to manufacture products for SkyBell. ADC's actions were harmful to Key Tronic, because they were aimed at limiting Key Tronic's ability to perform its obligations under its contracts and resulted in the damages at issue in this case. ADC intended to saddle Key Tronic with the resulting costs and prevent Key Tronic from earning revenue from the manufactured products.

8.7    Defendant ADC's actions were also through improper means, because they were in violation of RCW 62A.1-304 and ADC's obligation of good faith and fair dealing that was read into its own contracts with Key Tronic, including the Inventory Purchasing Agreement and the three-way Memorandum of Understanding. ADC's actions were intended to create a pretext for seeking an alternative manufacturer, *e.g.*, due to "Supplier's inability to provide production capacity." Defendant ADC's actions were unlawful unfair and deceptive acts. Defendant ADC caused critical component parts to be diverted away from Key Tronic that ADC knew were necessary for Key Tronic to manufacture the products—all while ADC knew Key Tronic was continuing to spend money on parts and materials for production.

8.8    Defendant ADC's actions were the factual and legal causes of Key Tronic's damages. But for ADC interfering with Key Tronic's supply chain to divert parts away from Key Tronic, Key Tronic and SkyBell would have continued performing their respective obligations under their Agreement. Defendant ADC's actions in diverting parts away from Key Tronic also proximately caused Key Tronic's damages and proximately caused SkyBell to breach its Agreement with Key Tronic, as ADC contacted Key Tronic's suppliers and caused them to stop providing Key Tronic the critical parts necessary for the manufacture of SkyBell's products, causing SkyBell to breach its ███████ with Key Tronic.

SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, INDEMNIFICATION, PROMISSORY ESTOPPEL, TORTIOUS INTERFERENCE

TRUSS FABER
1126 34th Avenue, Suite 312
Seattle, WA 98122
Tel: (206) 752-8255
Fax: (833) 422-0237

8.9    When Key Tronic and Defendant SkyBell executed their revised Manufacturing Agreement in October 2018, they anticipated approximately ███████████ per year to be performed under that Agreement. That Agreement could be terminated in the first four-year term only for cause. The initial term ran from October 2018 to October 2022. A portion of Key Tronic's manufacturing line was dedicated to manufacturing SkyBell's products. Defendant ADC proximately caused necessary parts to be diverted away from Key Tronic's manufacturing supply chain three months into the third year of the Agreement's four-year term. Defendant ADC thus proximately caused Key Tronic to lose more than ███████ in anticipated Purchase Orders, which entitles Key Tronic to more than $4,000,000 per Section 3.b of the Manufacturing Agreement.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court enter judgment in favor of Plaintiff and against Defendants and grant Plaintiff the following relief:

(a)    Damages in the amount of not less than $8,941,956.25 that consist of (i) the unpaid price of the products Plaintiff has manufactured and delivered to Defendants in the total amount of $1,235,161.05, (ii) the cost of Aged Inventory Plaintiff accumulated to date in the total amount of $2,841,372.38, (iii) a line fee in the total amount of approximately $350,000, (iv) Aged Inventory storage costs accrued to date in the total amount of $250,000, (v) prejudgment interest calculated at the rate of 12% per annum and accruing to the date of the judgment against Defendants to be entered in this case, (vi) statutory post-judgment interest, and (vii) at least $4,000,000 pursuant to Section 3.b of the Agreement;

(b)    Incidental damages, including, without limitation, any commercially reasonable charges, expenses or commissions incurred in the ordering, transportation, care and custody of the products that Plaintiff manufactured and delivered to Defendants, as authorized by RCW 62A.2-710;

SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED
COVENANT OF GOOD FAITH AND FAIR DEALING, INDEMNIFICATION,
PROMISSORY ESTOPPEL, TORTIOUS INTERFERENCE

**TRUSS** FABER
1126 34ᵗʰ Avenue, Suite 312
Seattle, WA 98122
Tel: (206) 752-8255
Fax: (833) 422-0237

(c)    All other damages authorized under RCW Title 62A, et seq. (Uniform Commercial Code);

(d)    An award to Plaintiff of expenses, reasonable attorneys' fees, and other costs of this litigation incurred by Plaintiff as a result of Defendants' breach of the Agreement, Inventory Purchase Agreement, the covenant of good faith and fair dealing implied in the Agreement, and other wrongful actions that gave rise to this civil action; and

(e)    Such other and further relief as the Court deems just and proper.

Dated:  November 21, 2023.

**TRUSS** FABER PC

By /s/*John C. Theiss*
John C. Theiss, WSBA No. 24488
Steven P. Vaughn, IL Bar No. 6327728
1126 34th Avenue, Ste. 312
Seattle, WA 98122
Phone: (206) 752-8255
Facsimile: (833) 422-0237
Email: john@trussfaber.com
Email: steven@trussfaber.com
***Attorneys for Plaintiff Key Tronic Corporation***

SECOND AMENDED COMPLAINT FOR BREACH OF CONTRACT, BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, INDEMNIFICATION, PROMISSORY ESTOPPEL, TORTIOUS INTERFERENCE

**TRUSS** FABER
1126 34th Avenue, Suite 312
Seattle, WA 98122
Tel: (206) 752-8255
Fax: (833) 422-0237